**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

MARCUS MONGER,

    Plaintiff,

v.

EYVETTE COOK; and OFFICER CALHOUN,

    Defendants.

CIVIL ACTION NO.: 6:14-cv-129

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Smith State Prison in Glennville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. Having conducted the requisite frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, I **RECOMMEND** that Plaintiff's Complaint be **DISMISSED** and this case be **CLOSED**. In addition, I **RECOMMEND** Plaintiff be **DENIED** *in forma pauperis* status on appeal.

STANDARD OF REVIEW

In any civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, Section 1915A requires the Court to screen the complaint for cognizable claims before or as soon as possible after docketing. The court must dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b)(1) & (2).

In conducting this initial review, the Court must ensure that a prisoner plaintiff has complied with the mandates of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915 & 1915A. However, in determining compliance, the Court shall be guided by the longstanding principle that *pro se* pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Walker v. Dugger, 860 F.2d 1010, 1011 (11th Cir. 1988).

In addition, the Court is guided by the Eleventh Circuit Court of Appeals' opinion in Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). In Mitchell, the Eleventh Circuit interpreted the language contained in 28 U.S.C. § 1915(e)(2)(B)(ii), which is nearly identical to that contained in the screening provisions at Section 1915A(b). As the language of Section 1915(e)(2)(B)(ii) closely tracks the language of Federal Rule of Civil Procedure 12(b)(6), the court held that the same standards for determining whether to dismiss for failure to state a claim under Rule 12(b)(6) should be applied to the initial review of prisoner complaints under Section 1915(e)(2)(B)(ii). Mitchell, 112 F.3d at 1490. While the court in Mitchell interpreted Section 1915(e), its interpretation guides this Court in applying the identical language of Section 1915A. See also Jones v. Bock, 549 U.S. 199, 215 (2007) (dismissal pursuant to Section 1915A(b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Because "[p]ro se pleadings are

2

held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

## PLAINTIFF'S ALLEGATIONS

Plaintiff asserts Defendant Calhoun violated his right to equal protection on May 25, 2014, by deliberately failing to give him his diet snack, even though Defendant Calhoun gave all other inmates their snacks. (Doc. 1, p. 5.) Plaintiff also asserts Defendant Calhoun violated his rights to equal protection and due process and subjected him to cruel and unusual punishment on May 29, 2014, when Defendant Calhoun gave him a roll of toilet tissue Defendant Calhoun knew had been sprayed with pepper spray. According to Plaintiff, Defendant Calhoun gave him this roll of toilet tissue "with the ill intention to cause" pain and suffering and was an act of retaliation because Plaintiff told Defendant Calhoun he was going to "write him up." (Id.) Plaintiff claims he received "some rashes etc. (sic)" to his body from this toilet tissue. (Id.)

Plaintiff asserts Defendant Cook violated his rights to due process and equal protection on July 1, 2014, because she ignored his concerns about being targeted by Defendant Calhoun. Plaintiff also asserts he told Defendant Cook he had a grievance to turn in, and she told him she was not going to mess with him and that she had to go to a meeting. (Id. at p. 6.) Plaintiff maintains Defendant Cook closed his tray flap and rejected his grievance, yet she took everyone else's grievance forms.

## DISCUSSION

Plaintiff's allegations implicate numerous theories of liability, and the undersigned addresses each of these theories in turn. The Court accepts Plaintiff's non-conclusory factual allegations as true, as it must at this stage.

**I.     Cruel and Unusual Punishment Claims**

Plaintiff's assertions that Defendant did not give him a snack on one (1) occasion and gave him a roll of toilet paper sprayed with pepper spray implicate the Eighth Amendment. Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, courts must examine the alleged violation both objectively and subjectively. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (quotation omitted). Second, the mental state of the prison official must have been "one of deliberate indifference to inmate health or safety." Id. (quotation omitted).

**A.     Denial of a Snack**

The "[w]ithholding of food does not *per se* constitute an objectively serious deprivation in violation of the Constitution." Adair v. Okaloosa Cty. Jail, No. 3:07CV425/MCR/EMT, 2008 WL 564616, at *2 (N.D. Fla. Feb. 27, 2008) (citing Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999)). "The circumstances, nature, and duration of a deprivation of life's necessities must be considered in determining whether a constitutional violation has occurred." Id. "In general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." Id. (quoting Deapain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001)); see also Whitnack v. Douglas Cty., 16 F.3d 954, 958 (8th Cir. 1994). Some courts which have considered situations factually similar to Plaintiff's

allegations have indicated that such deprivations are not of a constitutional magnitude. See e.g., Gardner v. Beale, 780 F. Supp. 1073 (E.D. Va. 1991), *aff'd*, 998 F.2d 1008 (4th Cir. 1993) (providing prisoner with only two meals per day, with an 18-hour interval between dinner and brunch, did not satisfy objective component of Eighth Amendment standard); Green v. Ferrell, 801 F.2d 765, 770–71 (5th Cir. 1986) (even on a regular, permanent basis, two meals a day may be adequate); Berry v. Brady, 192 F.3d 504, 506–08 (5th Cir. 1999) (finding that denying an inmate eight meals over seven months' time because of the inmate's failure to shave did not meet the objective component, and noting that the prisoner had not alleged any specific physical harm, nor had he claimed that he lost weight or suffered other adverse physical effects or had his health put at risk); see also Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (finding it "doubtful" that prisoner missing fifty meals in five months "was denied anything close to a minimal measure of life's necessities," and commenting that "[m]issing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."); Bennett v. Misner, No. 02-1662-HA, 2004 WL 2091473 (D. Ore. Sept. 17, 2004) (concluding that inmates failed to state an Eighth Amendment violation where they "neither alleged nor provided evidence to establish that they suffered significant injury or illness—such as specific, repeated instances of food poisoning or malnutrition—directly resulting from their exposure to unsafe or unsanitary kitchen conditions").

"Moreover, courts that have found constitutional violations when inmates were deprived of food have done so only when presented with more serious violations." Adair, 2008 WL 564616 at *3 (citing Simmons v. Cook, 154 F.3d 805, 809 (8th Cir. 1998) (denying prisoners four consecutive meals over two days violated the objective component of the Farmer test)); Cooper v. Sheriff of Lubbock Cty., 929 F.2d 1078 (5th Cir. 1991) (failure to feed prisoner

any food for twelve consecutive days unconstitutional); Dearman v. Woodson, 429 F.2d 1288, 1289 (10th Cir. 1970) (prisoner who was deprived of food for 50+ hours had a viable Eighth Amendment claim); Strope v. Sebelius, No. 06-3144, 2006 WL 2045840, at * 1 (10th Cir. July 24, 2006) (reversing district court's dismissal of Eighth Amendment deprivation of food claim for failure to state a claim, where prisoner alleged that on multiple occasions between March 2005 and June 2005 his meals were unacceptable; that a "sour'd" turkey sandwich made him sick to his stomach with severe cramps until the following morning; that the salads and oranges were routinely spoiled; that on one occasion the meal was "burnt beyond recognition"; that these were examples of an "everyday and on-going" practice of the prison; and that the prison "routinely" served spoiled food to prisoners); Lunney v. Brureton, No. 04-Civ.-2438-LAK-GWG, 2005 WL 121720 at *6 (S.D. N.Y. Jan. 21, 2005) (finding inmate's allegation that his meals were regularly spoiled and/or improperly prepared on "numerous occasions"; thus, eating the meals caused him to get sick and not eating them caused him to suffer the effects of malnutrition, were sufficient to satisfy the Eighth Amendment's objective component), *adopted by* 2005 WL 433285 (S.D. N.Y. Feb. 23, 2005).

Plaintiff does not contend that Defendants denied him food routinely or even on multiple occasions. Indeed, he does not claim that Defendants ever denied him a meal. Rather, he asserts that he was not given a snack on one occasion. These assertions do not meet the objective portion of the Farmer test. In addition, Plaintiff does not allege that he suffered any ill-effects from being denied one snack such that he can sustain his Eighth Amendment claim. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862 (11th Cir. 2008) (finding no constitutional violation even when the inmate was routinely deprived of lunch). Thus, this portion of

Plaintiff's cruel and unusual punishment claim against Defendant Calhoun should be **DISMISSED**.

### B. Toilet Paper Sprayed with Pepper Spray

Plaintiff's contention that Defendant Calhoun gave him a roll of toilet paper he knew was sprayed with pepper spray, which caused Plaintiff to get a rash, also implicates the Eighth Amendment's prohibition against cruel and unusual punishment. As stated above, a prisoner must meet an objective and a subjective standard to properly allege an Eighth Amendment violation. To show that the complained of condition of confinement, an inmate must set forth an allegation which reveals that condition is "objectively 'serious' or 'extreme.' This means that the prisoner must show, at the very least, that a 'condition of his confinement poses an unreasonable risk of serious damage to his future health or safety.'" Ivory v. Warden, Governor of Ala., 600 F. App'x 670, 676 (11th Cir. 2015) (quoting Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). Under the subjective standard, "the Supreme Court has explained, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. Therefore, to be held liable for deliberate indifference to inhumane conditions, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 677 (internal citation and punctuation omitted).

Even accepting Plaintiff's allegation that Defendant Calhoun gave him a roll of toilet paper he knew had been sprayed with pepper spray as true, Plaintiff fails to set forth any facts indicating his Eighth Amendment right to be free from cruel and unusual punishment was violated. At best, Plaintiff alleges he received a rash on his body from using this "tainted" toilet

7

paper. Such an allegation fails to demonstrate an unreasonable or excessive risk of serious damage to Plaintiff's health. Rather, such an allegation reveals only that Plaintiff received a very minor injury as a result of using the allegedly "tainted" toilet paper. A plaintiff must assert facts sufficient to meet the Eighth Amendment objective and subjective requirements in order to survive the Court's Section 1915A review. See Byrd v. Adams, 389 F. App'x 411, 412 (5th Cir. 2010) (affirming the district court's finding that the prisoner's complaint, in which he alleged he developed hemorrhoids as a result of having to resort to use of items other than toilet paper, was frivolous); see also, Chandler, 379 F.3d at 1295 ("[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment."). As Plaintiff's allegation fails to meet the two-pronged test under an Eighth Amendment analysis, this portion of his cruel and unusual punishment claim should be **DISMISSED**.

## II.  Retaliation Claim

Plaintiff maintains Defendant Calhoun retaliated against him by giving him a roll of contaminated toilet paper because Plaintiff threatened to file a grievance against him. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212. "To

prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Plaintiff fails to set forth any facts indicating that his threat to write a grievance against Defendant Calhoun is constitutionally protected speech. See Watts v. United States, 394 U.S. 705, 707 (1969) (noting there is a difference between and threat and constitutionally protected speech); see also Owens v. Leavins, 2007 WL 1141505, at *5 (N.D. Fla. Apr. 17, 2007) (finding the inmate failed to establish he engaged in protected speech when he threatened to file suit against defendant official in the event plaintiff received an injury). As Plaintiff fails to show he engaged in constitutionally protected speech, his retaliation claim fails and should be **DISMISSED**.

### III. Equal Protection Claims

Plaintiff also asserts that Defendants Calhoun and Cook treated him differently than other inmates. Specifically, Plaintiff states that Defendant Calhoun did not give him a snack on one occasion but gave other inmates their snacks. As to Defendant Cook, Plaintiff states that she did not accept his grievance form once, but she accepted other inmates' grievances. Such allegations give rise to a purported violation of Plaintiff's right to equal protection of the law.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the [government] engaged in invidious discrimination against him based on race, religion, national

origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006) (internal citation omitted). The equal protection clause prohibits only intentional discrimination. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff sets forth no facts which indicate that Defendants treated him differently than inmates who are similarly situated to him based on a constitutionally protected basis or that Defendants acted with a discriminatory intent. Rather, Plaintiff sets forth conclusory allegations in this regard. Consequently, Plaintiff's equal protection claim should be **DISMISSED**.

## IV.   Rejection of Grievance

Plaintiff maintains Defendant Cook would not accept his grievance, which implicates due process principles. However, Plaintiff fails to set forth sufficient facts to establish a plausible due process violation. The Eleventh Circuit has determined "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." Thomas v. Warner, 237 F. App'x 435, 437–38 (11th Cir. 2007) (agreeing with other circuits' decisions finding the same way and citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), and Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). In other words, Plaintiff's assertion that Defendant Cook failed to comply with the grievance procedure fails to state a plausible due process violation. Thus, Plaintiff's due process claim against Defendant Cook should also be **DISMISSED**.

## V.   Leave to Proceed *In Forma Pauperis* on Appeal

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[1] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in*

---

[1] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

*forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

CONCLUSION

It is my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED** and this case be **CLOSED**. It is also my **RECOMMENDATION** that Plaintiff be **DENIED** *in forma pauperis* status on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report to which objection are made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED**, this 26th day of August, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA